UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN STEPHEN KING AND KARIN PEARSON-KING, <br><br> Plaintiffs, <br><br> v. <br><br> SHERIFF GARY LUCAS, individually and as an employee, agent and/or Sheriff for Clark County, et al., <br><br> Defendants. | CASE NO. C09-5751 BHS <br><br> ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Plaintiffs' motion for leave to amend their complaint (Dkt. 16) and Defendant's motion to dismiss (Dkt. 12). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants Plaintiffs' motion and denies Defendant's motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On November 12, 2009, Plaintiffs John Stephen King and Karin Pearson-King filed a complaint against numerous defendants in the Superior Court of the State of

ORDER - 1

Washington in and for the County of Clark. Dkt. 10-4 ("Complaint"). Plaintiffs alleged that Defendants violated their federal and state constitutional rights. *Id*., at 8.

On December 4, 2009, Defendant Beverly Collins removed the action to this Court under 28 U.S.C. § 1331 and § 1343, which provide this Court original jurisdiction, and also under 28 U.S.C. § 1441(b), which removes claims to federal court if they allege violations of rights arising under federal law. Dkt. 10-19.

On December 21, 2009, Defendant YWCA Clark County filed a motion to dismiss Plaintiffs' claims against YWCA Clark County, and a motion for attorney fees and costs. Dkt. 12.

On December 30, 2009, Plaintiffs filed a motion for leave to amend their complaint. Dkt. 16.  On January 7, 2010, Defendant YWCA Clark County responded. Dkt. 17.

On January 11, 2010, Plaintiffs responded to Defendant's motion. Dkt. 18.  On January 15, 2010, Defendant replied. Dkt. 19.

## II. FACTUAL BACKGROUND

For organizational purposes, the Court will separate the facts alleged in Plaintiffs' original complaint from the facts alleged in Plaintiffs' amended complaint.

**A.    Original Complaint**

Plaintiffs are both residents of Clark County. Complaint ¶¶ 1.1.1, 1.1.2.  They allege that:

> 1.2.2.  Defendant YWCA Clark County is a Not For Profit Corporation organized under the laws of the State of Washington, is located in Clark County, and was the employer of Defendant Beverly Collins while

ORDER - 2

she was assigned to the Clark County Child Advocacy Center as a victims' advocate.

 1.2.3.  Defendant Beverly Collins acted in her individual and official capacities as an agent of Clark County; as an employee and agent of the Clark County YWCA; and in her individual capacity as the mother for minor child L.C. Collins is being sued individually and in her official capacities.

Next, Plaintiffs allege that "Defendants John and Jane Does, were Clark County employees and/or YWCA Clark County employees and had decision making authority for their respective agency." *Id*., at ¶ 1.2.11. And "Defendant Clark County (hereinafter 'County') is a municipal corporation and governmental subdivision of the State of Washington located in the County of Clark." *Id*., at ¶ 1.2.12.

Plaintiffs also allege that

 Each and all of the acts of the individual defendants alleged herein were done by the individual defendants, under color of law, to wit, under the color and pretense of statutes, ordinances, regulations, customs, policies and usages of the State of Washington and the County of Clark.

*Id*., at ¶ 1.2.16.

Plaintiffs further allege that "At all times herein relevant, the individual defendants were acting within the scope of their employment." *Id*., at ¶ 1.2.17. Plaintiffs allege that Defendants were acting in concert as follows:

 1.2.18.  At all times relevant, the YWCA of Clark County YWCA and the Child Advocacy Center, its agents officers and employees, including Beverly Collins, acted jointly and in concert with the other Defendants Gary Lucas, Anthony Spainhower, Michael E. Cooke, Arthur Curtis, Dustin Richardson and Kim Farr to pursue the investigation and prosecution of persons alleged to have committed crimes and offenses of a sexual nature to include the charges brought against Plaintiff John Stephen King.

ORDER - 3

     1.2.19.   A close relationship existed between the Clark County YWCA, its employees (including Beverly Collins) and the other Defendants for the purpose of performing the public function of investigating and prosecuting alleged offenders. These defendants jointly participated in the investigation and prosecution activities heretofore described.
     1.2.20.   At all times relevant, the actions of Arthur Curtis, Kim Farr, Dustin Richardson and the Clark County YWCA, its employees (including Beverly Collins) were intertwined for the purpose of performing the public function of investigating and prosecuting alleged offenders.  As a result, a close and joint nexus existed between the [sic] Arthur Curtis, Kim Farr, Dustin Richardson and the YWCA of Clark County, its employees (including Beverly Collins).  Accordingly, Defendant Beverly Collins acted under color of state law.

Plaintiffs state that "Defendant L.C., a Minor, is the son of Beverly and Jeffery Collins and is a resident of Clark County." *Id*., at ¶ 1.2.21.

With regard to the factual allegations underlying the causes of action, Plaintiffs allege that

     On April 16, 2009, at 3:10 p.m., Clark County Mental Health Court Coordinator John Stephen King, age 61, and completely gray haired, was sitting at his desk on Fourth Plain Avenue speaking to the mother of one of his clients of the Clark County Mental Health Court.

*Id*., at ¶ 7.1.

Plaintiffs also allege that

     7.3.   On April 16, 2009, L.C. alleged that a white male, about 40 years old, with dirty brown hair and a blonde beard driving a mid-80's champagne colored Honda, stopped him when he got off the bus and told him that his mother, Beverly Collins, was in the hospital and said to – "get in the car".
     7.4.   Previously, on or about April 8, 2009, while walking home from the bus stop, L.C. saw his mother driving home. L.C. frantically waved to his mother, Beverly Collins, to get her attention. Beverly Collins saw that L.C. was close to home, motioned for him to just walk the rest of the way and kept on driving. The person in the car near Beverly Collins, also seeing the frantic waving, stopped, turned around and asked L.C. if he needed help. L.C. said no, and ran home, telling his mother that the man in the car had spoken to him.

Next, Plaintiffs allege that "[o]n or about April 8, 2009, Beverly Collins, not realizing that the man had stopped to offer help to L.C., assumed the worst. Beverly Collins told L.C. about 'stranger danger'." *Id.*, at ¶ 7.5. And, "[o]n or about April 16, 2009, L.C. falsely alleged the same man told him to get into his car." *Id.*, at ¶ 7.6. Plaintiffs allege that

> On or about April 16, 2009, Beverly Collins called the police and gave the description to emergency dispatch alleging that at approximately 3:10 p.m. a white male, about 40, with dirty brown hair and blond beard attempted to get her son into his car.

*Id.*, at ¶ 7.7.

Plaintiffs allege that, in her call to emergency dispatch, Ms. Collins "described the car as a mid 80s Honda that is champagne colored. No plate number was observed." *Id.*, at ¶ 7.8.

Next, Plaintiffs allege that

> 7.10   On or about April 17, 2009, Beverly Collins left work early from the Child Advocacy Center and drove L.C. around the neighborhood looking for a similar car. Plaintiff John Stephen King was not working that day and so he and his wife, Karin Pearson-King, who have lived in the neighborhood for nineteen years and live about a block away from Beverly Collins and L.C., drove to the OMSI museum.
> \* \* \*
> 7.12.   Despite nothing about Plaintiff John Stephen King's appearance matching the description given by L.C., Beverly Collins followed and photographed Plaintiff John Stephen King and his vehicle, where she later falsely claimed he was the perpetrator.
> 7.13.   When Beverly Collins was finally interviewed by a representative of the Clark County Sheriff's Office, Beverly Collins falsely told police that Plaintiff John Stephen King was the man that accosted or attempted to lure her son.

Plaintiffs allege that Deputy Spainhower met with Plaintiff John Stephen King, that Mr. King provided Deputy Spainhower with an alibi, and that Deputy Spainhower took photographs of Mr. King and Mr. King's vehicle with Mr. King's permission. *Id.*, at ¶ 7.14-7.17.

Next, Plaintiffs allege that

> Deputy Spainhower took the photograph back to Beverly Collins who falsely identified Plaintiff John Stephen King as the man who lured her son by comparing it to the cell phone photograph she took of Mr. King on the day following her son's complaint. Deputy Spainhower then contacted Plaintiff John Stephen King at his office and falsely stated that instead of showing his photograph to the victim, he wanted Mr. King to submit to a polygraph instead.

*Id.*, at ¶ 7.18.

Finally, Plaintiffs allege that "Beverly Collins is employed at the Child Advocacy Center as a victim's advocate for the YWCA of Clark County." *Id.*, at ¶ 7.22.

**B.     Amended Complaint**

On December 30, 2009, Plaintiffs submitted a motion for leave to amend their complaint. Dkt. 16. The amended complaint alleges that

> At all times material, Defendant Beverly Collins acted in her official capacity as an agent of Clark County; as an employee and agent of the Clark County YWCA; and in her individual capacity as the mother for minor child L.C. Collins is being sued individually and in her official capacities.

Dkt. 16-3, at 3, ¶ 1.2.3.

Plaintiffs seek to add or amend the following:

> 1.2.18    At all times relevant, the YWCA Clark County and the Child Advocacy Center, its agents officers and employees, including Beverly Collins in her individual capacity and while she was employed as a victim advocate and performing her job functions at the child advocacy

ORDER - 6

center, acted jointly and in concert with the other Defendants Gary Lucas, Anthony Spainhower, Michael E. Cooke, Arthur Curtis, Dustin Richardson and Kim Farr to pursue the investigation and prosecution of persons alleged to have committed crimes and offenses of a sexual nature which resulted in charges brought against Plaintiff John Stephen King.

    1.2.19.  A close relationship existed between the Clark County YWCA, its employees (including Beverly Collins) and the other Defendants for the purpose of performing the public function of investigating sex based crimes, prosecuting alleged offenders and providing victim advocate services to victims. These defendants jointly participated in the activities heretofore described. Beverly Collins acted within the scope of her employment as a victim advocate at the CAC on behalf of her son, L.C.

    1.2.20.  At all times relevant, the actions of Arthur Curtis, Kim Farr, Dustin Richardson and YWCA Clark County, and its employees (including Beverly Collins) were intertwined for the purpose of performing the public function of investigating sex based crimes, prosecuting alleged offenders, and advocating for victims of these crimes. As a result, a close and joint nexus existed between Arthur Curtis, Kim Farr, Dustin Richardson and YWCA Clark County, and its employees (including Beverly Collins). Defendant Beverly Collins when acting as a victims' advocate on behalf of her son L.C. during the investigation and prosecution of Mr. King acted as an agent of Clark County.

*  *  *

    1.2.22  Defendant Beverly Collins is employed by YWCA Clark County as a victim advocate. Her duties include providing advocate services to victims of alleged sexual crimes at the Child Advocacy Center. In this capacity Beverly Collins failed to recuse herself from the investigation which involved L.C., her son, actively involved herself in the investigation, and influenced the prosecutor's decision to both prosecute and continue the prosecution of the Plaintiff John Stephen King.

    1.2.23  At all material times, YWCA Clark County supervised its employees who were victim advocates for the Child Advocacy Center and in conjunction with the Clark County Prosecuting Attorney and Sheriff's Department, was responsible for providing and managing victim advocate services. At no time did YWCA Clark County direct, instruct, or actively supervise Beverly Collins so as to ensure she did not represent her son as an advocate in the criminal case where he was the alleged victim.

    1.2.24  At no time did YWCA Clark County or Beverly Collins ask, request or direct another victim advocate to represent Beverly Collins' son in the investigation and prosecution, of John Stephen King.

    1.2.25  As a victim advocate for YWCA Clark County, assigned to the Child Advocacy Center, Beverly Collins' duties included: serving as a liaison between victims and Prosecution and Court staffs, accompanying victims to court proceedings and informing victims about their

constitutional and statutory mandated victim's rights, assessing victim need, acting as a resource for community service referrals and participating in the exchange of information with prosecutors by completing case documentation in both Victim Services and Prosecution files using both a paper-based and computer automated case management system.

\* \* \*

    6.22    Beverly Collins is employed at the Child Advocacy Center as a victim's advocate for YWCA Clark County.

    6.23    Dustin Richardson received the report from Deputies Spainhower and Cooke and knew that Beverly Collins was an advocate at the center where he worked. Richardson met with Collins while she was working at the Child Advocacy Center as a victim advocate and they agreed to charge John Stephen King with felony crimes.

\* \* \*

    6.34    Despite being provided with evidence that Mr. King could not have been the alleged perpetrator, Prosecutors Arthur Curtis, Kim Farr, Dustin Richardson and Victim Advocate Beverly Collins refused to dismiss the case, or conduct any further investigation of Mr. King's alibis. Dustin Richardson agreed to set over the first appearance for one week, for Mr. King to continue to gather evidence of his own innocence.

    6.35    During the course of several days after May 27, 2009, Mr. King's attorney presented the above alibi information to Defendants Arthur Curtis, Kim Farr, Beverly Collins and Dustin Richardson, with a request to dismiss the case; they continued to refuse to dismiss the charges and continued the prosecution of Mr. King. Dustin Richardson stated that he had spoken with victim advocate Beverly Collins at the Child Advocacy Center and that the victim advocate (Beverly Collins) was convinced that Mr. King was the perpetrator. Based on her insistence of Mr. King's guilt, Dustin Richardson would not dismiss the charges.

    6.36    Dustin Richardson also stated that the victim advocate, Beverly Collins insisted that Mr. King take a polygraph and he agreed Mr. King should do so before he would consider dismissing the charges.

    6.37    Dustin Richardson stated that Beverly Collins, insisted prosecutors had the right suspect. Working in concert with Beverly Collins and relying on her opinion of Mr. King's guilt, Arthur Curtis, Kim Farr and Dustin Richardson continued the prosecution of Mr. King.

\* \* \*

    6.46    Arthur Curtis, Kim Farr, Dustin Richardson, Beverly Collins, and L.C. falsely accused John Stephen King of crimes which did not occur, and continued the prosecution of Mr. King when there was no probable cause to continue such prosecution. In providing information and participating in the prosecution of the case against the Plaintiff, Beverly Collins acted both in the scope of her employment as a victim advocate

assigned to the Child Advocacy Center and in her personal capacity as L.C.'s mother.

\* \* \*

9.3   The actions of the individual defendants named in paragraph 9.2 [of the original complaint] resulted in the deprivation of Constitutional Rights of the Plaintiff and other citizens including but not limited to:

\* \* \*

(g) allowing employees to provide victim advocate services for family members which allowed them to improperly influence the investigation and prosecution of alleged suspects.

(h) allowing victim advocates of the CAC to influence charging decisions of the prosecutor's office.

\* \* \*

9.5   The above named defendants acted with deliberate indifference to the constitutional rights of plaintiff John Stephen King by maintaining a policy, practice or custom allowing unconstitutional acts and by failing to train their employees with regard to proper and lawful procedures in declaring conflicts of interests, corroborating child witness complaints, making inquiries and arrests of citizens, commencing and maintaining criminal prosecutions against citizens, allowing victim advocates to provide services to family members, terminating or suspending employees, knowing or having reason to know that the policy, practice or custom and the failure to properly train their employees as afore described would result in a deprivation of the constitutional rights of the citizenry.

\* \* \*

10.2   Upon information and belief, the Clark County Prosecutor Arthur Curtis, Deputy Prosecutor Kim Farr, Sheriff Gary Lucas, Michael Cooke and the Francine Reis of the Human Resources Department, are the policymakers for Clark County responsible for instituting and enforcing the policies, ordinances, regulations, customs and practices of the Clark County Prosecutor's office, The Clark County Sheriff's Department and the office of Human Resources for Clark County. That YWCA Clark County, by and through its President and its board members are the policy makers for YWCA Clark County responsible for instituting and enforcing the policies, ordinances, regulations, customs and practices of YWCA Clark County and that That [sic] the actions of the defendants named above resulted in:

(a)  arresting citizens without probable cause that a crime had been committed or that the citizens being arrested had committed any crime;

(b) failing to investigate whether a crime had been committed before arresting and detaining citizens;

(c) using their positions as police officers to intimidate and threaten citizens and using their power to commence criminal actions against citizens in order to attain personal goals and objectives;

      (d) failing to intervene in the unconstitutional acts of co-employees and subordinates; and

      (e) violating established due process and property rights, unlawfully placing employees on leave without pay, without advising them of their statutory rights, or providing due process prior to placing them on such leave;

      (f) failing to terminate the criminal prosecution of John Stephen King upon learning facts showing a lack of probable cause to continue the prosecution.

      (g) Failing to declare a conflict of interest in the handling of the investigation or prosecution of John Stephen King when they knew or should have known a co-worker was the complaining witness.

      (h) using their position as a victim advocate for the CAC to pressure the prosecutor's office to charge and maintain false charges against John Stephen King.

* * *

    12.5   Beverly Collins, acting in her official capacity and within the scope of her employment, presented false information to the prosecutor's office as the victim advocate for her son, L.C. which contributed to Mr. King's damages.

Finally, Plaintiffs state that they "made additional changes to correct grammar and to simplify and clarify the nature of their claims." Dkt. 16-3, at 7.

### III. DISCUSSION

**A.   Motion to Amend**

Fed. R. Civ. P. 15(a)(1)(B) provides that a party may amend a pleading once as a matter of course "if the amended pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading, or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

In this case, Plaintiffs filed their complaint in the Superior Court of the State of Washington in and for the County of Clark, and the Defendants removed to this Court. Dkt. 10. Defendant YWCA Clark County submitted a motion to dismiss based on Rule 12(b)(6) on December 21, 2009. Dkt. 12.  Plaintiffs submitted a motion for leave to

ORDER - 10

amend on December 30, 2009, which is within 21 days of service of Defendants' motion. Dkt. 16. Therefore, this Court grants Plaintiffs' motion for leave to amend.

**B.    Motion to Dismiss**

Defendant YWCA Clark County argues that Plaintiffs' complaint should be dismissed because it does not meet the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Dkt. 13 at 14-16.  In addition, Defendant YWCA Clark County argues that Plaintiffs have failed to state a claim upon which relief may be granted because: (1) Defendant Beverly Collins was not acting within the scope of her employment with YWCA Clark County when she allegedly committed wrongful acts toward Plaintiff, (2) Defendant YWCA Clark County cannot be liable under 42 U.S.C. § 1983 because it is a private entity and not subject to *Monell* liability, and (3) Defendant YWCA Clark County is a private entity that does not have prosecutorial authority. Dkt. 13. Defendant also seeks attorney fees and costs. *Id*.

**1.    Pleading Standard**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

ORDER - 11

Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . ." 550 U.S. at 555- 556. The plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id*.

**2.    Acting Under Color of State Law**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under 42 U.S.C. § 1983, plaintiffs must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Section 1983 is the appropriate remedy only if both elements are satisfied. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985).

In addition, plaintiffs must allege facts demonstrating that individual defendants caused, or personally participated in causing, the alleged harm. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

The Supreme Court has used various state action tests to determine whether a private party's involvement with state or local government justifies the conclusion that the party was engaged in "state action." *See Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961).  The "state action doctrine" is designed to preserve a private sphere free of constitutional restraints, as well as to ensure "that constitutional standards are invoked when it can be said that the state is responsible for the specific conduct of which the plaintiff complains." *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citations, quotation marks, and brackets omitted).

Under the "close nexus test," state action is present if the state has ordered the private conduct, or if the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 830, 1004 (1982).

In this case, Defendant first argues that Beverly Collins was acting in the role of being a parent, not as an employee of YWCA Clark County.  However, Plaintiffs allege in their amended complaint that Beverly Collins was acting within the scope of her employment. Dkt. 16, ¶ 1.2.19. Defendant has failed to show that Plaintiffs' allegations

are precluded by the broad § 1983 state actor jurisprudence. Therefore, the Court denies Defendant's motion on this issue.

Second, Defendant argues that YWCA Clark County, a non-profit corporation, did not act under color of law. Dkt. 13, at 18. Defendant cites *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, (9th Cir. 2003), for the proposition that conclusory allegations are insufficient to establish that a private party is a state actor under § 1983.

In *Simmons*, plaintiff Simmons sued for injuries from a car wreck. *Simmons*, 318 F.3d at 1158. As part of his suit, Simmons claimed that the defendant's private attorney conspired with state officers to deprive him of due process by keeping him in prison during the civil proceedings. *Id*. at 1161. The court in *Simmons* held that Simmons could not sue defense counsel under § 1983 because the attorney was in private practice and was not working under color of state law. *Id*.

However, *Simmons* is distinguishable from this case because Plaintiffs have alleged that Beverly Collins, a child victims' advocate, worked for Defendant YWCA Clark County and also worked in concert with prosecutors to pursue criminal charges against Plaintiffs. Moreover, Defendant cites no authority to support its proposition that it cannot be liable under § 1983 because it is a non-profit corporation. Dkt. 13, at 18. Therefore, the Court denies, without prejudice, Defendant YWCA Clark County's motion to dismiss on this issue.

**3.     Monell Liability**

The language of § 1983 is expansive and does not expressly incorporate common law immunities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 637 (1980).

ORDER - 14

Municipalities are subject to suit under § 1983, but municipalities are not liable merely for employing tortfeasors, and respondeat superior is an insufficient basis for establishing municipal liability. *Monell*, 436 U.S. at 690. Instead, plaintiffs must establish that a policy or custom of the municipality caused the constitutional injury. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*, 507 U.S. 163, 166 (1993). This requirement distinguishes acts of the municipality from acts of municipal employees. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

If an employee commits a constitutional violation pursuant to a longstanding practice or custom, the custom allegedly causing the rights violation need not receive municipal ratification in order to serve as the basis for a claim under § 1983. *Monell*, 436 U.S. at 691. Those plaintiffs contending that they were singled out for unusual treatment do not establish the presence of a longstanding practice or custom and must instead demonstrate that the person causing the violation has final policymaking authority, that the final policymaker ratified the rights violation, or that the final policymaker acted with deliberate indifference to a subordinate's constitutional violations. *Christie*, 176 F.3d at 1235.

In this case, Defendant YWCA Clark County argues, based on *Monell*, that it cannot be liable for alleged § 1983 violations because it is a non-profit corporation. Dkt. 13, at 18-19.  However, Defendant's argument consists of a sentence of case law and a conclusory sentence of how that case law applies to Plaintiffs' allegations.  Under Fed. R. Civ. P. 7(b)(1), Defendant has not stated with particularity the grounds for the order

sought. Therefore, the Court denies, without prejudice, Defendant YWCA Clark County's motion to dismiss Plaintiffs' *Monell* liability claims.

### 4. Malicious Prosecution

Defendant YWCA Clark County moves the Court to dismiss Plaintiffs' malicious prosecution claim because Defendant, as a private entity, does not have prosecutorial authority. Dkt. 13, at 19-20. It is unclear what relief Defendant seeks in submitting this argument because Defendant again recites some case law and has failed to provide any analysis regarding the particular allegations in this case. Defendant's motion fails to meet the requirements of Fed. R. Civ. P. 7(b)(1) on this issue as well. Therefore, the Court denies, without prejudice, the remainder of Defendant YWCA Clark County's motion to dismiss.

## C. Attorney Fees

In this case, Defendant YWCA Clark County seeks attorney fees and costs incurred in resisting Plaintiffs' lawsuit. Dkt. 13, at 20-21. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), authorizes courts to award reasonable attorney fees to the prevailing party in a § 1983 action. Therefore, the Court denies Defendant YWCA Clark County's motion for attorney fees and costs because it is not a prevailing party in this action.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' motion for leave to amend their complaint (Dkt. 16) is **GRANTED**, Defendant YWCA Clark County's motion to dismiss (Dkt. 12) is **DENIED**

ORDER - 16

**without prejudice**, and Defendant YWCA Clark County's motion for attorney fees and costs (Dkt. 12) is **DENIED**.

DATED this 9th day of March, 2010.

                                                            /s/ Benjamin H. Settle
                                                            BENJAMIN H. SETTLE
                                                            United States District Judge

ORDER - 17